José A. Domínguez, Plaintiff and Appellant, v. Carmen Nadal del Moral, etc., Defendant and Appellee.

No. 6042. Argued May 2, 1933.—Decided July 19, 1933.

458

*Pascasio Fajardo Martínez* for appellant.  *José Sabater* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

About the year 1916, José A. Domínguez and his wife, Micaela del Moral, constituted a mortgage on a house and lot belonging to them, in favor of Carmen Nadal widow of Del Moral, to secure the sum of $5,000 which the latter had loaned to the above-mentioned spouses.  On July 29, 1929, the said Carmen Nadal widow of Del Moral was judicially declared incapable of managing her person or property, and her son Francisco del Moral y Nadal was appointed to represent her as guardian.  Subsequently, he was substituted by María del Carmen del Moral widow of Romero, his appointment having been set aside on the ground that the guardianship pertained to said María del Carmen del Moral widow of Romero, the eldest daughter of the incapacitated person.  While Francisco del Moral was acting as such guardian, he brought suit on behalf of the incapacitated person against José A. Domínguez and his wife, to enforce said mortgage credit by the summary proceeding provided by the Mortgage Law and its Regulations.  The plaintiff in the instant case seeks to annul that foreclosure proceeding on

the ground that when said proceeding was instituted the mortgage debt had already been paid directly to the creditor, Carmen Nadal widow of Del Moral.

It is alleged in the complaint herein that the plaintiff and his wife owed Mrs. Nadal the total sum of $12,206.20, which included the $5,000 mortgage the object of the said foreclosure proceeding. It is further alleged that a written agreement was entered into between the said lady, represented by her attorney in fact, Francisco del Moral, and the plaintiff, José A. Domínguez, and that by virtue of said agreement the plaintiff was allowed a discount of $1,464.93 on the balance owed by the plaintiff and his wife, provided said balance was paid within 90 days from the date of said agreement. The plaintiff failed to pay that balance within the 90–day period, but he alleges that Mrs. Nadal promised to keep the agreement in force, and that on May 14, 1921, she gave him a receipt in full settlement of any debt, claim, or credit, including capital and interest, which up to that date José Domínguez and his wife, Micaela del Moral de Domínguez, might be owing to her. The document on which plaintiff relies for his allegation that he had paid the mortgage debt to his mother-in-law, Mrs. Nadal, reads as follows:

"This agreement made between Francisco del Moral, attorney in fact of the widow, Mrs. Del Moral, and José A. Domínguez, witnesseth as follows:

"If Mr. Domínguez or his heirs deliver to the widow Mrs. Del Moral the sum of ten thousand seven hundred and forty-one dollars and twenty seven cents ($10,741.27) within the period of ninety days counted from the date hereof, the widow Mrs. Del Moral shall issue a receipt in full settlement to the said Mr. Domínguez, for twelve thousand two hundred and six dollars and twenty cents ($12,206.20) which is the total amount of the accounts owed by the said Mr. Domínguez and his wife to the widow Mrs. Del Moral according to the memorandum containing their various debts and dated the 20th of April of the current year. If Mr. Domínguez or his heirs fail to

take advantage of this offer within said period, the widow Mrs. Del Moral shall then be fully at liberty to maintain or to terminate this agreement.

"Mayagüez, P. R., May 24, 1920.

"C. N. widow of Del Moral.
"By (Sgd.) F. del Moral.

"(Sgd.) José A. Domínguez.

"On this day, Saturday, May 14, 1921, I, Carmen Nadal widow of Del Moral, hereby CONTINUE, RATIFY, AND EXTEND THE WITHIN AGREEMENT: I RECEIVED IN FULL SETTLEMENT OF ALL DEBT, CLAIM, OR CREDIT, WHICH ON ACCOUNT OF PRINCIPAL AND INTEREST MAY BE OWING TO ME ON THIS DAY BY MR. JOSÉ A. DOMÍNGUEZ AND HIS WIFE, MRS. MICAELA DEL MORAL DE DOMÍNGUEZ, JOINTLY OR SEVERALLY.—Mayagüez, P. R., May 14, 1929.

"(Sgd.) Carmen N. widow of Del Moral."

In the answer denial is made that Mrs. Carmen Nadal widow of Del Moral executed any receipt or document in full settlement, or that the plaintiff delivered to said lady any money in payment of the debts contracted with her. It is averred that Francisco del Moral, in his capacity as attorney in fact of Mrs. Nadal, supervised all her business affairs, and when payments were made to the incapacitated person, he intervened directly in his capacity as attorney in fact and manager of her property, which he had managed for a period of approximately 25 years. It is added that the plaintiff at no time had made any demand upon her creditor or attorney in fact for the execution of a deed of cancellation of the mortgage, and that the defendant had never been informed that the amount of the mortgage in question had been paid, it being alleged on the contrary that the plaintiff never paid to any person whatsoever said mortgage credit, either wholly or partially. In the answer further denial is made that the signature appearing in the document transcribed in the complaint and which is claimed to be that of Carmen N. widow of Del Moral, is the genuine and authentic signature of the incapacitated person. The lower court rendered judgment

for the defendant. Thereupon the plaintiff took this appeal, wherein he has assigned twenty-five errors.

It is first urged, that the lower court erred in denying plaintiff's motion to strike out certain particulars of the answer to the supplemental complaint. The complaint alleged that in April, 1920, the plaintiff and his wife, Micaela del Moral, owed to the defendant Carmen Nadal on various accounts including the $5,000 mortgage involved, the total sum of $12,206.20, and that on April 30 said creditor, Mrs. Nadal, sent to the debtor, Mr. Domínguez, a statement of account which was accepted by the latter. In the allegation which was sought to be stricken out, it is stated that besides the indebtedness amounting to $12,206.20, the plaintiff and his wife owed to the defendant the sum of $6,500, as an advance against a hereditary share, plus $14,000 which it is alleged the defendant, Mrs. Nadal, paid for the firm of Martínez & Domínguez, of which the plaintiff was a partner, by virtue of a deed whereby she had guaranteed the payment of the debts of said firm, and that the defendant also contributed $17,500 in cash as a silent partner of the said firm, which latter sum has not been accounted for by the plaintiff.

The ground urged in support of the eliminations requested is that the allegations involved are immaterial, impertinent, and irrelevant to the facts set forth in the complaint, said averments having no connection therewith.

We agree with the appellant that those allegations have no direct connection with the controverted facts. However, we fail to see that the evidence introduced in support of these superfluous allegations has caused any prejudice to the plaintiff, because said allegations, even if held to have been proved, would have nothing to do with the essential question involved, which is whether or not there was any consideration in the alleged execution of the receipt that appears to have been signed by Carmen N. widow of Del Moral.

It was also sought to strike out the thirteenth paragraph of the answer, with the exception of the first part thereof

where it is alleged that the defendant denies that plaintiff was granted the right to continue in force the agreement referred to in said paragraph of the complaint, "for in this matter Mr. Francisco del Moral y Nadal always intervened as attorney in fact of the incapacitated person, the creditor, and the latter never intervened personally in the matter; and the defendant avers that the said Francisco del Moral y Nadal never granted an extension of time to the plaintiff, but that when the agreed term expired, he considered the agreement as terminated, since Mr. Domínguez had failed to exercise the privilege granted, and that the said attorney in fact has thus considered the matter throughout the nine years that have elapsed since that time; and that up to the time of the commencement of this action, the plaintiff has not stated or communicated to Francisco del Moral y Nadal nor to the incapacitated person when she was mentally competent, that he had paid any moneys on any account; and it was always considered that the plaintiff had never paid said debt nor any other debt contracted with the said incapacitated person.''

The words appearing in quotation above were sought to be stricken out. We think that the averment could have been more concise and perfect, and that the clause ''for in this matter Mr. Francisco del Moral y Nadal always intervened as attorney in fact of the incapacitated person, the creditor, and the latter never intervened personally in the matter'' constitutes an explanation of the averment made in the preceding clause rather than an allegation in itself; but the thirteenth paragraph contains allegations which should not be stricken out in view of the issues involved and the question raised in the answer. Therefore, we are of opinion that the court did not err in refusing to strike out the said paragraph.

The last portion of the fourteenth paragraph of the answer was also sought to be stricken out. In said paragraph the execution of the receipt in full settlement and the payment of the money are denied, and later on it is stated therein: ''for Francisco del Moral y Nadal as the attorney in fact of

the incapacitated person intervened in all her affairs, and when payments were made to her, the said Francisco del Moral y Nadal intervened directly as such attorney in fact who administered the property of his mother Carmen Nadal widow of Del Moral, defendant herein, and administered the same for a period of twenty-five years more or less.''

By those words the defendant also attempted to explain the reason for the preceding denial. Those facts, if alleged concisely and positively and not as an explanation, might properly appear in the answer. They were not, however, stricken out by the court, and we do not think that the plaintiff has been at all prejudiced. At most, these details have served to fully inform him of the allegations of the defendant and of the grounds on which she relied to support them.

The following particulars were requested to be stricken from the fifteenth paragraph of the answer:

''And on the contrary, it was always considered and known to Francisco del Moral y Nadal, as attorney in fact of the defendant, that the plaintiff had never paid the mortgage debt of five thousand dollars nor the interest thereon either wholly or partially, to such an extent that in 1928, when the mortgage property was sold for the nonpayment of taxes, the Collector of Internal Revenue of Mayagüez made demand upon the defendant as creditor and the latter was compelled to pay the taxes owed by the plaintiff, who never reimbursed her for said taxes paid by her as mortgage creditor.''

We think that the court did not err in refusing to strike out the paragraph above transcribed.

We copy below the assignments of error numbered 2, 3, 4, and 5, which we shall consider jointly since they all refer to the weighing of the evidence:

''*Two.*—The lower court erred in failing to accord the proper weight to plaintiff's 'Exhibit F,' consisting of a receipt, signed in the handwriting of the mortgage creditor, defendant herein, Carmen Nadal widow of Del Moral, which instrument, together with the other documentary and oral evidence introduced, has established beyond a reasonable doubt that the five thousand dollars of the principal

and interest of the mortgage in question, the object of the summary foreclosure proceeding now sought to be annulled, was paid by the mortgage debtors to the creditor prior to the time when said summary foreclosure proceeding was instituted.

"*Three.*—The lower court acted under the influence of passion, prejudice, partiality, and manifest error in weighing the evidence and in applying the law in this case.

"*Four.*—The lower court, in disregarding the clear and preponderant documentary and oral evidence, which establish that the mortgage in question and the interest thereon were fully paid, violated the provisions of our Law of Evidence relating to the probative value of documents.

"*Five.*—The lower court committed an error of law in not applying to this case the clear and acknowledged principle of the presumption accompanying the receipt signed in the handwriting of the mortgage creditor, Carmen Nadal widow of Del Moral, in favor of the mortgage debtors José A. Domínguez and his wife, Micaela del Moral de Domínguez and evidencing the payment of the $5,000, principal amount of the mortgage in question, and of the interest. Especially when it is considered that the authenticity of the signature therein was preponderantly proved, and that there was no evidence against its genuineness, nor any evidence to justify the inference that what the receipt shows in its face is not a true portrayal of the facts it embodies."

The appellant maintains that the receipt he offered in evidence to show that he had paid the mortgage loan conclusively proves that the mortgage was discharged. In support of his contention he cites Jones on Evidence, and argues that the presentation of a receipt raises the presumption of payment of the debt and is evidence of great weight. From the work cited by the appellant, volume 1, page 337, we transcribe the following extract:

"As a rule, the possession by the debtor of a receipt from his creditor is regarded by him, at all events, as conclusive evidence of payment. But with the variation in form of the document, it has been found necessary to bring it within the rules or presumptions relating to the payment of money, which depend upon the known and usual modes of doing business recognized by the courts. Most receipts for money fall under one of three heads—receipts in

full, receipts on account, and receipts which merely acknowledge payment of money without reference to its purpose or application; and they are all governed by one common rule, that a receipt *prima facie* imports exactly what it says, neither more nor less. If it specifies that it is 'in full,' *prima facie* it is so; if 'on account,' then *prima facie* more remains due, but with the right to either party to show in either case that it is erroneous. . . .''

In volume three, section 491, of the same treatise, Jones explains the probative value of a receipt. According to this author, the party signing it admits that the fact it recites is true. This admission has the same characteristics as a verbal admission, with the difference that since it is written it is a safer and more enduring memorial than the mere recollection of a witness of what was said and done. ''It is not of the nature of a written contract, whose tenor and purport cannot be affected by the evidence of what was said or done contrary to its terms. The consequence is, that like a mere verbal admission, it may be contradicted by evidence to show that it was founded in misapprehension or surprise; that it was made for a particular purpose, and that its use was by the understanding of the parties to be limited to special occasions. If it forms a part of a contract, and is embodied in the writing which contains its terms, it may still be contradicted, and the stipulations founded upon the consideration admitted to have been received may fail in such cases for want of consideration. Hence the rule that a written receipt for the payment of money is not conclusive, and that it is open to explanation by parol.''

As to the effect of a receipt when it has not been explained, the said author, in volume 3, section 492, of the cited work, says:

''A written receipt is evidence of a high character. Although it is not conclusive, it is *prima facie* evidence of the truth of the recitals which it contains. It is evidence of so satisfactory a character as *not to be overcome, except by clear and convincing testimony;* and the burden of proof as a matter of course rests upon the one attacking it. But such circumstances of fraud or mistake or suspicion as would

lead a court of equity to set aside a contract may be shown, either in an equitable or legal proceeding, to vary or impugn the receipt. Although an instrument is in form a receipt, if it is in fact a *complete contract*, it is governed, as we have shown in the preceding section, by the same rules in this respect as are other contracts, and cannot be varied by parol. But if the instrument is of a *dual character*, being both a receipt and a contract, the part which is a receipt may be explained; and, if a contract is incorporated in a receipt, or a receipt in a contract, the receipt may be varied, although the contract may not. Thus, an instrument in the form of a receipt for goods specifying kinds, numbers, prices and total value, which is in the handwriting of the receiver and on which the other party indorses the money paid, is a contract of sale, and cannot be varied by parol. And an instrument in the following words, 'Received of Jacob W. Loeb one thousand dollars to be held by me for him and to be returned to him by me upon ten days' notice in writing', which constitutes both a receipt and a contract, is not open to explanation contradicting the contractual part, while it could be, of course, open to challenge as to the receipt of the money.''

As stated by Jones, it may be shown by parol evidence that there was a want of consideration in the execution of the receipt. In the case of *Kenny* v. *Kane,* 14 Atl. 597, decided by the Supreme Court of New Jersey, a Mr. Kenny, counsel for Mrs. Kane, acknowledged having received from the latter a certain sum of money for professional services, in a receipt bearing his signature. The plaintiff testified that the defendant had not paid any money to him. The defendant admitted that she did not deliver any money at the time the receipt was given. The jury brought a verdict in favor of Mr. Kenny. The Supreme Court of New Jersey, in affirming the judgment appealed from, among other things said:

''It is a mere instrument of evidence, and was well defined by Lord Tenterden, in *Graves* v. *Key,* 3 Barn & Adol. 313, where he says: 'A receipt is an admission only, and the general rule is that an admission, though evidence against the person who made it, and those claiming under him, is not conclusive evidence, except as to the person who may have been induced by it to alter his condition. A receipt may therefore be contradicted or explained.' And so say all the authorities. *Elwell* v. *Lesley,* 7 N. J. Law, 349; *Crane* v.

*Alling*, 15 N. J. Law, 423; *Cole* v. *Taylor*, 22 N. J. Law, 59; *Wil-drick* v. *Swain*, 34 N. J. Eq. 167, 35 N. J. Eq. 326; *Dorman* v. *Wilson*, 39 N. J. Law, 474; *Ensign* v. *Webster*, 1 Johns. Cas. 145; *Ryan* v. *Ward*, 48 N. Y. 204; Bigelow, Estop. c. 18; 2 Whart. Ev. sec. 1064, and cases in notes. The result of an examination of these cases is that although a receipt be given with knowledge, and there was no error, fraud, or mistake, yet, if there be sufficient proof that there was no consideration given the receipt will not sustain the defense of payment. It is admitted in this case that there was no money or other consideration paid when the receipt was given, and that at the time the defendant expressly promised that she would afterwards pay what was right. There is no error in the judgment, and it will be affirmed.''

In the instrument offered in evidence by the plaintiff, the widow Mrs. Del Moral ratifies an agreement previously entered into, and states that she received in full settlement of any debt, claim or credit, on account of principal and interest, which José A. Domínguez and wife might be owing to her. It is not stated what was it that the widow Mrs. Del Moral received in full settlement. It is Mr. Domínguez who says that he delivered to her $10,000 in lawful currency of the United States. The defendant asserts that there was no consideration in the alleged transaction, that is to say, that no money whatsoever was paid by the plaintiff to the widow Mrs. Del Moral. We are of opinion that any evidence tending to show a want of payment was admissible, and that if the conclusion is reached that the plaintiff did not pay anything to the widow Mrs. Del Moral, the action brought can not prosper.

According to the statements of the plaintiff, when his mother-in-law, Doña Carmen, signed the document, the only persons present were the plaintiff and Doña Estebanía, a daughter-in-law of Doña Carmen, "now deceased." So that, with the exception of Mr. Domínguez, no other person could testify at the trial of this cause regarding the said transaction. The receipt appears to have been signed on May 14, 1921; Doña Carmen was declared legally incapacitated on

July 29, 1929. During the period intervening between those two dates, Mr. Domínguez did not inform any member of the family of the existence of the receipt in full settlement. Let us see what the plaintiff himself testified on cross-examination by counsel for the defendant:

"Q.—On May 14, 1921, when according to the recitals of the document Doña Carmen gave you a receipt in full settlement, did you communicate it to any member of the family?

"A.—No, sir.

"Q.—To no one?

"A.—No, sir.

"Q.—Did you inform Mr. Francisco del Moral?

"A.—No, sir.

"Q.—When did you speak to Mr. Francisco del Moral for the first time about the receipt in full settlement to which you refer?

"A.—It was—I am not absolutely sure—but I think it was on December 31, 1926, on occasion of the execution of that deed before you.

"Q.—Was that the first time you told Don Francisco?

"A.—Yes, sir."

When counsel for the defendant asked Mr. Del Moral whether in the year 1926, when the deed of the mortgaged property was executed, any reference was made to the receipt, the attorney for the plaintiff objected. The court overruled this objection. Counsel for the defendant had a perfect right to pursue this line of inquiry, which he modified, however, by asking the witness instead when had he learned for the first time of the existence of the said receipt. Mr. Del Moral answered that it was when he received a letter from Mr. Domínguez complaining that Mr. Del Moral should have included in the inventory of the property of Doña Carmen, filed in the district court, various sums of money that were paid in full in 1921, according to the receipt issued by the widow Mrs. Del Moral and which he had in his possession. This letter was written on September 20, 1929, after the incapacity of Doña Carmen Nadal had been decreed. When the plaintiff was asked his reason for saying nothing in regard to the

payment of the $10,000, the only reason he adduced was: "Francisco del Moral and I have been enemies since a month after the death of his father." He was asked again why he had not said anything, and he answered: "Because of enmity, Your Honor." Even if the testimony of the plaintiff that he mentioned the payment in 1926 were true, it would always result that he had waited five years to state merely that he had paid, without mentioning the receipt, nor the $10,000, nor anything regarding the alleged delivery of said sum to Doña Carmen. The lower court was justified in not believing the testimony of the plaintiff as regards this vague reference to the payment of the mortgage, in 1926. No other relative appears to have had any notice of this receipt prior to the time when the widow Mrs. Del Moral was declared incapacitated. The plaintiff communicated the existence of said receipt to Damián del Moral and Angel Martínez, respectively son and son-in-law of Doña Carmen, when the latter had already become mentally deranged.

It is very remarkable that Mr. Domínguez should have kept silent in regard to the existence of this receipt while the widow Mrs. Del Moral was mentally sound. The only reason he offers to justify his silence is the enmity existing between himself and Francisco del Moral, the attorney in fact of Doña Carmen. It occurs to us that if this enmity existed, Mr. Domínguez had still a stronger reason to provide for his protection, by converting said private document into a public instrument in order to obtain the proper cancellation of the mortgage credit. If Mr. Domínguez had paid the money to the widow Mrs. Del Moral, he had nothing to fear from a disclosure of such fact. Mr. Del Moral could have done nothing prejudicial to his interest, because the plaintiff's mother-in-law herself and Doña Estebanía would have protected him, by acknowledging that the debt had been satisfied.

Nevertheless, Mr. Domínguez, unmindful of his own interest, remains silent until after the death of Doña Estebanía and the adjudication of incapacity of his mother-in-law. To-

day, there remains but one witness to establish the payment, and that witness is the plaintiff himself. Death sealed the lips of Doña Estebanía, whose testimony would have been useful to substantiate the truth, and the incapacity of Doña Carmen has deprived us also of the benefit of her testimony.

Mr. Domínguez stated that he received a letter signed by Doña Carmen and also a memorandum or statement of account accompanying said letter. He added that after conferring with Doña Carmen, he went to see her attorney-in-fact, Mr. Francisco del Moral, and that the contract for the readjustment and final payment of the debts owed by the plaintiff was the outcome of that interview. Mr. Domínguez admitted that he did not pay the debt within the period of ninety days fixed by the agreement, but he stated that on January 6, 1921, when Doña Carmen came to visit him at his home, while conversing with her, he told her: "Doña Carmen, I made a contract with Paco last year. He agreed to give me a receipt in full settlement if I paid $10,200. I can not take advantage of the contract and I would like to have you make it valid." Doña Carmen agreed to this, according to the witness. When this evidence was offered, the attorney for the defendant objected on the authority of *Wilcox* v. *Axtmayer*, 23 P.R.R. 319. The lower court admitted the evidence, and the defendant took an exception. The court, however, gave no credence to the statements of the plaintiff, as it clearly appears from the painstaking analysis it makes in its opinion of the evidence introduced at the trial.

The plaintiff later testified, in answer to questions asked by counsel for the defendant, that Doña Carmen directed Don Francisco to draw the agreement on the day following that of his conversation with his mother-in-law. However, from the conversation he says he had with her in his home it appears that he informed her of the contract entered into during the previous year with Paco del Moral as if it were something new.

The court states in its findings of fact that on December 22, 1921, or seven months after the receipt in full settlement was signed by Carmen Nadal widow of Del Moral, the plaintiff was furnished at his request with a statement of account wherein the mortgage debt was included as still outstanding, and that the plaintiff did not object.

Counsel for the appellant characterizes that finding as unjust and biased because he thinks that it is not supported by the evidence, and he transcribes a part of the testimony of Francisco del Moral in an attempt to establish the error attributed to the trial court. Mr. Del Moral, upon being shown the letter book of Doña Carmen Nadal, testified that he kept the said book, which consisted of 235 pages, and that at page 83 of the same there appeared a memorandum of the accounts of José A. Domínguez and Micaela del Moral. That memorandum was prepared by Tomás Balzac, bookkeeper of Doña Carmen Nadal, and was sent to José A. Domínguez by Mr. Del Moral himself, who deposited it in the mail. Said memorandum was dated December 22, 1921.

We shall now transcribe what Mr. Del Moral testified upon being examined by the attorney for the plaintiff, who copies in his brief only the last part of the testimony of this witness:

"Q.—Could you examine the letter book?

"A.—Yes, sir.

"Q.—Please look it over. Please look for the statements of account pertaining to the year '28, to the year '29, and especially to 1930. There could be none for 1930, but for example, look for the year 1928.

"A.—There is none for 1928.

"Q.—Look then for 1927.

"A.—Here is one for 1921.

"Q.—Look for that of 1923.

"A.—There is none.

"Q.—Look for that of 1924.

"A.—There is none.

"Q.—That of 1925.

"A.—There was no need for it; he never paid it.

"Q.—Please state to the court whether, during the time that Doña Carmen Nadal, his wife and Mr. Domínguez carried accounts, how many statements of account were rendered to them.

"A.—Here is one. ·

"Hon. Judge: That of 1921.

"A.—There is one for 1920; April 30, 1920.

"Q.—And those for the years '23, '22, and '21?

"A.—There is none here." ·

The witness appears to have testified at first that there was a statement of account for 1921, and later, when asked about the years '23, '21, and '22, to have answered that there was none. Plaintiff relies on this part of the testimony of Mr. Del Moral for his contention that the court acted with bias and injustice in making the finding that the statement of account dated December 22, 1921, had been sent to Mr. Domínguez.

However, counsel for plaintiff forgets that he had before him the letter book, and that in the transcript of the evidence it is made to appear by both parties, with the approval of the district judge, that the document offered in evidence by the defendant and admitted against the objection and exception of the plaintiff, is set forth in the letter book at page 83. Apart from the fact that the plaintiff had an opportunity to examine the said letter book, the literal transcription of the document in the record, taken from page 83 of said letter book, is the best evidence that can be offered to prove that the statement of account dated December 22, 1921, appears in said letter book. Francisco del Moral was not the only one who mentioned this memorandum and its delivery to Mr. Domínguez. The bookkeeper, Tomás Balzac, also testified, in answer to questions asked by counsel for the plaintiff, who exhibited to him the letter books of Doña Carmen Nadal, that on December 22, 1921, a memorandum was prepared for Mr. Domínguez and his wife at the request of the former, and that said memorandum was sent to Mr. Domínguez.

In the aforesaid memorandum there appears this item: "Secured loan of $5,000, stamps $8, $5,008." It is practically identical with the item set forth in the memorandum sent to Mr. Domínguez on May 12, 1920, which reads thus: "Secured loan for (p/) $5,000 and stamps $8.00, $5,008.00." The plaintiff accepted this memorandum of 1920 as correct, and acknowledged that it contained an item of a mortgage for $5,000, which was the only mortgage that the plaintiff owed to Doña Carmen Nadal. The same can be said as to the item that appears in the memorandum of 1921, for the purpose of identification.

On the above evidence the lower court based its conclusion that the memorandum was delivered to the plaintiff. And it was natural that the silence and inaction of Mr. Domínguez during the eight years that elapsed before Mrs. Nadal was declared incapacitated, should seem inexplicable. Despite the fact that in said memorandum the mortgage loan was made to appear as an unpaid debt, Mr. Domínguez did not approach his mother-in-law to inform her that they were trying to collect from him a debt which he had already paid. His inaction in 1921 is in contrast with his diligence in 1929, when he learned that in the inventory of the property of the widow Mrs. Del Moral there were included several items that the plaintiff claimed to have paid in 1921, according to the receipt given by his mother-in-law and which he held. In 1921, when the statement of account that included the mortgage credit was received, the widow Mrs. Del Moral still had the right use of her mental faculties. In 1929, when the inventory of the property of Doña Carmen Nadal was filed in court, she had already been declared incapacitated. These circumstances could not be disregarded by the judge. Mr. Del Moral also testified that in the letter book itself there appeared at page 188, a letter addressed to Mr. Domínguez on May 18, 1925. Said letter, authorized by the witness as attorney in fact of Doña Carmen Nadal widow of Del Moral, was sent to Mr. Do-

mínguez and deposited in the mail by the witness himself, as he stated in his testimony. The said letter reads as follows:

"Mayagüez, P. R., March 18, 1925.—Mr. José A. Domínguez, City.—Dear Son-in-Law: Several days ago an offer was made to purchase the Marina lot on which you gave me a mortgage 9 years ago, for $5,000, with interest thereon at 12 per cent per annum, said rate of interest having been reduced, after the mortgage became due, to 10 per cent per annum, as per agreement of April 20, 1928, until final payment thereof. Today the interest amounts to approximately $5,000, but as they only offer $8,000 for the lot, and desiring that you should derive some benefit, I am willing to accept for interest $1,500, plus the principal; it being understood that should you not accept this sale now available, I shall withdraw the reduction I am making in the amount of interest, and everything shall remain as agreed in the documents I now hold.—Although I have struggled to secure a more substantial benefit for you, I have been unable to do so, but I feel certain that should you call on the purchaser you might secure an increase of $500. Awaiting your esteemed advices on this matter, I beg to remain, Very truly yours, C. N. widow of Del Moral."

Mr. Domínguez testified that since 1920 he had not received any other statement of account from the widow Mrs. Del Moral. His statements, however, were not believed by the lower court. There was also admitted in evidence over the objection of the plaintiff, the book of inventories and balances pertaining to the property of Doña Carmen Nadal, together with the accounts kept by her attorneys in fact, Mr. Francisco Del Moral, from 1909 to 1929. On April 17, 1926, Doña Carmen Nadal by a public deed accepted the inventories made to date, and acknowledged that all the accounts included in each inventory "have been examined and approved by her." The accounts of the plaintiff, including the $5,000 loan, appear in inventories made subsequent to 1921; and on these inventories and the testimony of Tomás Balzac the lower court based its finding that it appeared from the accounts that the defendant had not paid,

either in whole or in part, the debts he owed to his mother-in-law. Balzac testified that he kept said book until 1929, and that he worked as bookkeeper for Doña Carmen for twenty-five years. While he testified, he had before him the inventory book. These accounts, entered on the books at a time when there was no special interest to alter or falsify the facts, show that subsequent to 1921, Mrs. Nadal did not consider the mortgage debt as paid.

The plaintiff relies largely on a letter he wrote to his mother-in-law on April 23, 1921. In that letter the plaintiff states, among other things: "I wish to remind you and beg of you to inform your attorney in fact of the conversation I had with you regarding my intention to pay the balance fixed by your attorney in fact and myself, in the private agreement which we signed at the warehouse of Moral & Cía., on the 24th of May last, and which you kindly agreed to keep in force, as I intend to deliver said sum to you in payment of the outstanding debts that my wife Micaela and I owe you, which delivery I intend to make within a very short time, and I sincerely regret that because of the failure to put through a sugar transaction that I should have carried out last May, it was not possible for me, as I desired, to pay those debts on that date. I am confident that in a very short while I shall go to see you and make the delivery, and with best wishes to you from myself and from Micaela, I beg to remain, Very truly yours, (Sgd.) José A. Domínguez."

It is evident that this letter was written for some purpose. The plaintiff sent it by registered mail, and it appears to have been answered, according to the letter book kept by the attorney in fact, Francisco del Moral. "It seems that you are mistaken," answered Doña Carmen, "when you state that I promised you to keep in force the agreement you made with my attorney in fact on May 24 of last year, for you know that I never do anything without consulting my son and attorney in fact." Then the plaintiff appears to have called

on his mother-in-law in order to settle his debts. If the plaintiff, who did not need to announce to Doña Carmen his intended visit to deliver the money, wrote said letter with the intention of leaving a record of the fact that he was getting ready to pay the debt, it seems to us that his purpose would have been more effectively accomplished by apprising his relatives of the payment of the $10,000, and by canceling through a deed the mortgage credit. On this occasion, and before making the payment, the plaintiff disregarded his enmity with Mr. Del Moral in asking Doña Carmen to notify her attorney in fact of the conversation he had had with her and of her promise to keep the agreement in force. Yet, after the alleged payment he urges as a reason for not disclosing the existence of the receipt his personal enmity with Mr. Del Moral.

There is another letter, written by Mr. Domínguez to the attorney in fact Del Moral, which also merits some comments. This letter was written by reason of a certain foreclosure proceeding instituted on December 15, 1921, by the Banco Comercial de Puerto Rico, against José A. Domínguez. In referring to the foreclosure of this mortgage, the lower court said:

"On December 15, 1921, there was instituted in this court the summary foreclosure proceeding number 8646, by the Banco Comercial de Puerto Rico against José A. Domínguez, to recover $4,700.00 as principal, $188.00 as interest, at the rate of 8 per cent per annum, for the first six months, and $846.00 at the rate of 9 per cent per annum, for the two years following, and $1.19 each day from November 22, 1921, until full payment shall have been made, and $300 for costs. The mortgage loan that gave rise to said foreclosure proceeding was contracted by the plaintiff on May 21, 1919, and he had not paid the principal amount nor the interest thereon, amounting to $1,034, at the time the said proceeding was brought, which the plaintiff could not pay; and two years later, the plaintiff compromised the matter with the bank by agreeing to pay $400 cash and $200 monthly.

"The plaintiff admitted that Mrs. Carmen Nadal widow of Del Moral had never brought suit against him for the amounts he owed her and, therefore, the court is unable to find a satisfactory explanation for the fact that although the plaintiff was in such a situation that he could not even pay the interest on his debt to the bank, which gave rise to the summary foreclosure proceeding, yet he could pay a debt that was not pressing and leave unsatisfied one which might bring him serious prejudice."

The plaintiff says in his brief that this foreclosure proceeding was brought seven months after the payment of the mortgage to Doña Carmen Nadal, and hence that the court started from a false premise in establishing its conclusion. In the letter of December 19, 1921, written by the plaintiff to Mr. Del Moral, the former complains bitterly of the conduct of the latter towards him, and blames him for the failure of a transaction involving the sale to Mr. Cabanillas of a lot in Comercio Street, that would have enabled him "to pay $3,000 to the Banco de Puerto Rico on account of the mortgage they are going to foreclose." Cabanillas was ready and willing to pay $5,000 to Doña Carmen "when the mortgage she had on said lot became due." We transcribe below the last part of Mr. Domínguez' letter:

"Today I must act to prevent my ruin and I call on you to remind you that you owe me a duty of protection. You allowed your business firm to injure me by canceling a policy I never made, but which I am sure was legal and just, and I lost, because of your indifference or your passion, an opportunity to pay my debt to the Bank, as I lost later for the same reason the opportunity I had at least to reduce this debt had you accepted Cabanilla's offer which was very reasonable and fair. I have no intention to answer the complaint filed by the Bank, because I am in duty bound to acknowledge the positive right of the Bank to recover what it lent me and which I have not paid, and I trust that you will settle this matter for me; not by paying what I owe without due protection to your interests (as attorney in fact of Doña Carmen to whom I allude and appeal in making my request to you regarding this matter of the Bank), but in such a way that this debt will be assumed by Doña Carmen to whom I shall pay, either by receiving this sum as

an advance to Micaela against her hereditary share, or by mortgaging this house of mine to answer for the principal and interest. I request this help because it is indispensable to me and because I have no one on whom I may call for aid at this critical moment, and my financial situation does not allow me to make any disbursement.''

A reading of Mr. Domínguez' letter is sufficient to perceive that the situation of which he complains began prior to May 14, 1921. The mortgage loan which gave rise to the foreclosure proceeding brought by the bank was made on March 21, 1919, and the plaintiff did not pay the principal nor the interest thereon during the pendency of said proceeding. We can not hold that the lower court erred in its conclusion when the plaintiff himself said, in requesting help from Doña Carmen, ''that at this critical moment my financial situation does not allow me to make any disbursement.'' Yet, seven months previously, the plaintiff appears to have paid $10,000 to Doña Carmen, ''who would have never brought suit against him,'' and to have left outstanding the mortgage with the bank which later resulted in the foreclosure proceeding.

It is true that plaintiff testified that in 1920 or 1921 he sold a house for $6,300, and that at the end of 1920 the International Banking Corporation paid him $10,000, and Mr. Mario Mercado $9,000 by virtue of a compromise in a suit for damages; but his letter addresed to Del Moral shows that he could not make any disbursements when he wrote it, and it is strange that if he had received on the aforesaid dates the amounts alleged, he should lack funds with which to pay to the bank a mortgage amounting to $4,700.

The plaintiff testified that he had delivered to Doña Carmen nine $1,000 bills and two $500 bills. Upon being questioned by the attorney for the defendant, he stated that in addition there was $746 that Mrs. Del Moral gave to the son of the plaintiff. Now we ask, what did Doña Carmen do with this money? Neither her attorney in fact nor her other children had any knowledge of this payment nor of the receipt

which appears to have been executed while Doña Carmen had the right use of her mental faculties. It is not easy to dispose of such a sum as $10,000 without someone knowing about it, and it does not appear that Doña Carmen had any reason to conceal the money or to abstain from communicating the transaction to her sons. The natural thing was that she should have informed her son and attorney in fact of the delivery of the money, in order that he might enter the proper credit on the books and thus cancel the indebtedness of the plaintiff.

By the sixth assignment of error it is maintained "that after the lower court had considered as satisfactory proof the genuineness of the signature reading in the handwriting of the mortgage creditor on the receipt thus attesting to the satisfaction of the mortgage in question, it was error for the lower court to hold that there was fraud in the execution of said instrument since such assertion is not warranted by the evidence of the plaintiff nor that of the defendant, nor by any inference whatsoever."

The lower court, after stating that only the plaintiff was able to testify regarding the execution of the receipt in full settlement since Doña Estebanía was dead and Mrs. Del Moral was incapacitated, declared that upon weighing the evidence offered, including the testimony of the handwriting expert, and upon examining several unquestioned signatures of Doña Carmen it was inclined to believe that the signature, which appeared on the receipt, was her genuine signature. The document that embodies the agreement entered into by the plaintiff and the attorney in fact of Doña Carmen, together with the alleged ratification thereof, has a dual character by reason of the contractual relationship therein set forth and the words "received in full settlement." The lower court concluded that there was no consideration for the alleged execution of this receipt, and we think that this conclusion was justified.

In the seventh assignment of error, it is maintained by the appellant that the foreclosure proceeding instituted against Mr. Domínguez by Francisco del Moral, as guardian of the incapacitated person, is null and void because the guardian was not duly authorized nor invested with power to represent, as such guardian, the incapacitated person.

Francisco del Moral acted as guardian of Doña Carmen Nadal under a judicial appointment, which he accepted and exercised until this Supreme Court held that in accordance with the Civil Code, when the incapacity of a parent is involved, the guardianship pertains to the eldest child, whether male or female. Mr. Del Moral was acting as guardian of the incapacitated person during the pendency of the foreclosure proceeding now sought to be annulled, which proceeding was prosecuted for her benefit in order to recover the amount of a debt. According to section 56 of the Code of Civil Procedure, when an infant or an insane or incompetent person is a party, he must appear, either by his general guardian or by a guardian *ad litem* appointed by the court in which the action is pending, in each case, or by the judge thereof. Even conceding that Francisco del Moral could not discharge the office of general guardian at the time of the institution or termination of the foreclosure proceeding, it would always result that the lower court authorized said gentleman to enforce the mortgage credit by summary process. Mr. Del Moral requested such authorization of the court, and if the latter, after being advised of the purpose sought, authorized said Mr. Del Moral to institute the said proceeding on behalf of the incapacitated person, we think that the same should not be annulled merely because the eldest child of Doña Carmen had not as yet been appointed her general guardian. The truth is, as stated by the attorney for the defendant, that there existed a mortgage deed executed by the plaintiff in favor of Doña Carmen Nadal; that the mortgage had become due; that the plaintiff did not pay the principal or interest thereon, and hence the creditor was entitled to enforce

her credit; and that the fact that Mr. Francisco del Moral acted with judicial authority, on behalf of the incapacitated person, who is his own mother; does not warrant the annulment sought on the ground that the eldest child of the incompetent person had not been appointed her general guardian. Doña María del Carmen, eldest daughter of the incapacitated person, was appointed as guardian, and in that capacity appeared in this suit for the purpose of opposing the annulment of the foreclosure proceeding sought by the plaintiff. The appearance of the incompetent person through her lawful guardian revealed her assent to all the acts performed by Mr. Francisco del Moral in the prosecution of said proceeding.

The plaintiff has failed to discuss the eighth error assigned. It is based on the admission in evidence of the foreclosure proceeding instituted by the Banco Comercial against Mr. Domínguez on December 15, 1921. It is stated in the assignment that the court erred, but nothing is said as to what the error consisted of. It should be overruled.

The ninth assignment is predicated on the admission in evidence of the deed wherein Doña Carmen Nadal approved the inventories made by her attorney in fact, Francisco del Moral. There are set forth in these deeds the inventories subsequent to 1921 and the accounts of the plaintiff, among them the $5,000 loan. This assignment is also overruled.

The tenth assignment is based on the admission in evidence of the general book of inventories of the property of Doña Carmen Nadal, on the ground that as it is an account book of the defendant, and the balance she sent to the plaintiff had been accepted as true and correct, Mrs. Nadal was precluded from offering any evidence tending to contradict such statement of account. The evidence was admissible. There appear in these books the annual inventories taken of the property of Doña Carmen Nadal. The accounts of the plaintiff subsequent to 1921 also appear therein. This is one of the many circumstances present in this case, wherein the

defendant maintains that the alleged execution of the receipt in full settlement was without consideration. The question of whether or not the defendant may impeach an account previously passed upon, is not one to be considered at this time. The essential thing is to determine whether or not there was a delivery of the $10,000 in payment of the indebtedness of the plaintiff.

By the eleventh assignment it is maintained that the lower court erroneously admitted in evidence a letter of the collector of internal revenue of Mayagüez regarding the forced sale of the property in question for nonpayment of taxes to the People of Puerto Rico. In the document admitted by the court the collector of internal revenue of Mayagüez notified Doña Carmen Nadal that the People of Puerto Rico had adjudicated to itself the property described, which was the one mortgaged in favor of this lady, in satisfaction of the delinquent taxes pertaining to the years 1926–1927 and 1927–1928. This notice was addressed by the collector to Mrs. Carmen Nadal because she was the owner of a mortgage credit burdening said property.

The collector promised to suspend the proceedings for a period of five days in order to give the mortgage creditor an opportunity to take advantage of section 333 of the Political Code and to avoid having to pay interest at the rate of 12 per cent per annum, demandable after the property should be finally adjudicated to the People of Puerto Rico. This document was identified by the collector himself, who appeared as a witness for the defendant. There were introduced in evidence, together with said notice, the tax receipts pertaining to the years 1926–27 and 1927–28, which appear to have been paid by Mrs. Carmen Nadal widow of Del Moral on the said property. The court did not err in admitting this evidence. Counsel for plaintiff specifically complains of its admission on the ground that he was not afforded an opportunity to examine it. The said notice and tax receipts are documents

that can be easily understood and examined. The attorney for the plaintiff had an opportunity to examine them, and probably did examine them, when they were offered in evidence. If he failed to do so he should blame himself and not charge a lack of opportunity therefor.

The plaintiff in his brief submits no argument under the assignments numbered 13, 14, and 15, which we have examined and found to be without merit.

The sixteenth assignment is based on the admission by the court of a certain letter offered in evidence by the defendant. Said letter was written in reply to the one addressed by Mr. Domínguez to Mr. Del Moral on December 19, 1921, which was admitted without any objection from the plaintiff. Mr. Del Moral merely advised the plaintiff that he was returning the papers in the foreclosure proceeding instituted against him by the Banco Comercial, and that he had conferred with Doña Carmen. The admission of this evidence, which was really immaterial, caused the plaintiff no prejudice.

The seventeenth assignment is founded on the admission in evidence of certain promissory notes executed by Francisco del Moral, as attorney in fact of Doña Carmen Nadal, and Mr. José A. Domínguez, as a member of the firm of Martínez & Domínguez, S. en C., in favor of the Royal Bank of Canada. The defendant contends that it was necessary to show that Doña Carmen had paid for account of the plaintiff certain sums of money which the latter should have paid. This evidence is very remote and it does not appear to be connected with the questions at issue. However, although we fail to see the materiality of the evidence, the error involved is unimportant as it affects in no way the question of whether or not the plaintiff has paid the money which he alleges to have paid to his mother-in-law.

The eighteenth assignment, which the appellant does not discuss in his brief, is confined to the assertion that the lower

court should not have admitted certain evidence, and fails to state the reasons on which the objection is based. It must be overruled.

The nineteenth assignment is not discussed in the appellant's brief either. It has been examined by us and must also be overruled.

The twentieth assignment is based on the action of the court in permitting the witness Tomás Balzac, upon being examined by the attorney for the defendant, to testify regarding the contents of the books of the defendant, the books themselves being the best evidence. Mr. Balzac testified with the books placed before him and, apart from the fact that his testimony was admissible, said books had been introduced in evidence.

The twenty-first assignment is that the lower court allowed Angel Martínez, a witness for the defendant, to be examined as to when the receipt had been mentioned and when the witness had seen it for the first time. The question was entirely relevant. Angel Martínez, son-in-law of Doña Carmen Nadal, testified that he saw the receipt for the first time in the year 1930, and that the plaintiff spoke to him of having paid to Doña Carmen Nadal the $10,000 in $1,000 bills after said lady had been declared incapacitated.

The twenty-second assignment is not discussed by the plaintiff in his brief and should be dismissed as being without merit.

The twenty-third error is based on the action of the lower court in permitting "the witness Angel Martínez to testify, upon being examined by the attorney for the defendant, in regard to the motives that the latter had for executing a written contract which had no connection with the controversy in question." This document had been introduced by the plaintiff himself, who is right when he states that the same has no connection with the controversy. The plaintiff says in his brief that said document was offered in evidence for

the purpose of showing that Doña Carmen had contracted with Mr. José A. Domínguez directly, without the intervention of her attorney in fact. Doña Carmen executed a guarantee of $10,000, which Domínguez agreed to reimburse to her in case she were required to pay said sum. The person in whose favor the guarantee was given, Angel Martínez, a partner of Mr. Domínguez to whom he had just sold his interest in the firm of Martínez & Domínguez, S. en C., testified with reference to this transaction that he inquired of Francisco del Moral whether he would give his mother's signature, and that, after it was agreed to obtain the signature of Doña Carmen Nadal, the document was executed in the office of Attorney Angel Vázquez, in the presence of Francisco del Moral, José A. Domínguez, and the witness. This testimony does not contradict, as the plaintiff claims, the above-mentioned contract, which after all has no connection whatever with the controversy.

The twenty-fourth assignment is not discussed by the plaintiff in his brief. It is without merit and should be overruled.

The judgment of the lower court must be upheld. The defendant has been unable to offer direct evidence concerning the want of consideration in the execution of the receipt in full settlement. According to the plaintiff, three persons were present at the time of such execution: Doña Carmen Nadal, her daughter Doña Estebanía, and Mr. Domínguez. Doña Carmen has been declared incapacitated and Doña Estebanía is dead. There remains but one witness, and this witness is the person in whose favor the receipt appears to have been executed. The defendant, however, has offered the only possible evidence consisting of a mass of circumstances, which speak eloquently and justify the judgment of the lower court.

The judgment appealed from should be affirmed.